WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elsie Manygoats,<br><br>              Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>              Defendant. | No. CV-22-08028-PCT-DLR<br><br>**ORDER** |

Plaintiff Elsie Manygoats, on behalf of her deceased husband Charley Manygoats ("Charley"), seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR"), denying Charley relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 18.) Before the Court are the parties' cross-motions for summary judgment, which are fully briefed.[1] (Docs. 18, 19, 24, 25.) For the reasons that follow, Plaintiff's motion is denied, and Defendant's cross-motion is granted.

**I.    BACKGROUND**

    **A. The Settlement Act**

In 1974, Congress enacted the Navajo and Hopi Land Settlement Act ("Settlement Act"), which authorized a judicial partition of land previously referred to as the Joint Use Area—occupied by both Navajo and Hopi Residents—into the Navajo Partitioned Lands

---

[1] Plaintiff's oral argument request is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

("NPL") and the Hopi Partitioned Lands ("HPL). Pub. L. No. 93-531, 88 Stat. 1712 (1974) (formerly codified as amended at 25 U.S.C. §§ 640d to 640d-31); *see Clinton v. Babbitt*, 180 F.3d 1081, 1083–86 (9th Cir. 1999). The Settlement Act also created ONHIR, an independent federal agency, to provide relocation benefits to any head of a household whose household was forced to relocate because of the partition. 25 U.S.C. § 640d-14(b). Plaintiff seeks these benefits.

A Navajo applicant is eligible for benefits if (1) he was a legal resident of the HPL as of December 22, 1974, and (2) was a head of household at the time he moved off of the HPL. 25 C.F.R. §§ 700.147(a), 700.69(c). The applicant bears the burden of proving residence and head of household status. *Id.* § 700.147(b). Only the residency element is at issue in this case.

Determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019). Manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, homesite leases, public health records, medical records, school records, employment records, birth records, Joint Use Area Roster, and any other relevant data. *See* 49 Fed. Reg. 22,278.

That said, an applicant "who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277. For instance, under the "temporarily away" exception, an applicant can establish legal residency by showing substantial, recurring contacts with his home combined with manifestations of intent to maintain residence within the HPL. *Akee v. Off. of Navajo & Hopi Indian Relocation*, 907 F. Supp. 315, 317 (D. Ariz. 1995); see *also Tso v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *4 (D. Ariz. Apr. 26, 2019).

### B. Facts and Procedural History

Charley was born on February 5, 1947, and was an enrolled member of the Navajo

Nation. (AR. 246.) Growing up, Charley lived with his father, Red Manygoats, who had a residence on Black Mesa in the Red Lake Chapter area of the Navajo Reservation, later partially partitioned for the use of the Hopi Indians. (AR. 169.) Charley's family also had a cornfield at Cow Spring in an area partitioned for Navajo Indians. (AR. 170.)

Charley married Plaintiff in 1969. (AR. 134.) Plaintiff grew up in Cow Springs in an area partitioned for the Navajo Indians, and she continued to live in her family's Cow Springs hogan following her marriage to Charley. (*Id.*)

Charley filed an application for Relocation Benefits on February 17, 2010, listing "[HPL] old coal mine on Black Mesa" as his residence on December 22, 1974. (AR. 18). On August 14, 2012, ONHIR investigator, Joseph Shelton, conducted a field investigation to identify the location of Charley's claimed HPL homesite. (AR. 62.) Charley and Plaintiff guided Shelton to the area on the HPL where they claimed four hogans once stood. (*Id.*) In Shelton's report, he noted that sites one and two showed "no evidence of past dwelling" and that sites three and four had "trace[s] of debris" in the area where Charley and Plaintiff claimed the hogans stood. (*Id.*) Shelton's report also noted that the claimed homesite is in a remote area at the base of Black Mesa, accessible only by a Porcupine Wash Bed; that the BIA enumeration did not show improvements at this location; and that another applicant for Relocation Benefits, Yodell Billah, has claimed this area as a homesite. (*Id.*)

On January 6, 2013, ONHIR denied Charley's application for Relocation Benefits. A hearing before an Independent Hearing Office ("IHO") was held on September 18, 2015. (AR. 130–96.) The IHO issued his "Findings of Fact, Conclusions of Law and Decision" on November 20, 2015, determining that Charley was not eligible for Relocation Benefits because he was not a resident of the HPL on December 22, 1974. (AR. 245–51.) ONHIR denied Charley's Motion for Reconsideration on December 7, 2015, and entered Final Agency Action on February 11, 2016. (AR. 265, 269.) Plaintiff initiated this action on February 11, 2022, seeking judicial review of ONHIR's denial of relocation benefits. (Doc. 1.)

II.     **LEGAL STANDARD**

## A. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and, after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. However, when reviewing agency action under the Administrative Procedure Act ("APA"), there are no disputed facts that a district court must resolve. *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). The administrative agency—not the Court—is the fact-finder. *Id.* The Court's job is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Thus, summary judgment is "an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Id.* at 770.

## B. APA Standards of Review

Under the Administrative Procedure Act ("APA"), a reviewing court must uphold agency action unless it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995) (internal quotation marks omitted). The scope of review under this standard is narrow and "a court is not to substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted.) Still, if ONHIR "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise," then its decision is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). A decision is also arbitrary and capricious if ONHIR

fails to follow its own precedent or fails to provide a sufficient explanation for doing so. *See Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The Court's review is highly deferential. *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). The IHO is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record. *Magallanes*, 881 F.2d at 750. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold ONHIR's decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

### III. DISCUSSION

Plaintiff contends that ONHIR's denial of relocation benefits was arbitrary and capricious and unsupported by substantial evidence. She raises four arguments for the Court's consideration: (1) the IHO erred in discrediting witness testimony; (2) the IHO departed from ONHIR policy by exclusively relying on the BIA enumeration in making the residency determination; (3) the IHO failed to apply ONHIR's temporarily away policy; and (4) ONHIR breached its fiduciary duties by failing to disburse relocation benefits to Charley. The Court addresses each in turn.

**A. Substantial evidence supports the IHO's credibility findings.**

"When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). An IHO's credibility findings are entitled to substantial deference. *De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990). Nevertheless, the Court will only defer to "credibility findings are that fairly supported by the record and supported by specific and cogent reasons for the rejection of the testimony." *Hossain v. Immigr. &*

1  *Naturalization Serv.*, 7 Fed. Appx. 760, 760 (9th Cir. 2001). In assessing credibility, an
2  IHO may "adequately find a lack of credibility based on internal inconsistencies in a
3  witness's testimony" or "the totality of the record." *Id.* (citing *N.L.R.B. v. Doral Bldg.*
4  *Services, Inc.*, 666 F.2d 432, 435 (9th Cir. 1982)).

5        Here, the IHO found that Plaintiff and Charley were generally credible witnesses
6  except with regard to the frequency of Charley's visits to Black Mesa in 1974 and 1975.
7  (AR. 247–48.) The IHO also found that Charley's uncle, John Lee, was not a credible
8  witness because his testimony was confusing and contradictory. (AR. 148.) The IHO
9  provided specific and cogent reasons supported by substantial evidence for discrediting
10 these witnesses.

11       The IHO explained that although Plaintiff and Charley claimed that he had
12 substantial, recurring contact with Black Mesa, the totality of the record contradicted that.
13 First, unlike at Black Mesa, Plaintiff and the children had a home of their own in Cow
14 Springs where they lived full time. (AR. 136.) Moreover, Plaintiff infrequently visited
15 Charley at Black Mesa, and when she did, she never stayed overnight. (AR. 148.) Second,
16 Charley used his earnings to support his wife, Plaintiff, and their four children at Cow
17 Springs. (AR. 184.) Third, Charley had no residence or dwelling of his own at Black Mesa;
18 rather, he claimed that he either stayed at his father's or sister's residence. Yet, there is no
19 mention of Charley in his sister's relocation file, nor is there enumeration of Charley's
20 father at Black Mesa. (AR. 189, 274.) Fourth, despite Plaintiff and Charley's claims that
21 four hogans existed at the Black Mesa site, an ONHIR investigator was unable to find
22 evidence of habitation. The ONHIR investigator also found that there was limited access
23 to the site—that it could only be reached through a wash—and that all that remained at the
24 site were scraps and debris on the ground. (AR. 191.) Fifth, another family had already
25 claimed the site at Black Mesa as their residence. (AR. 190–91.) Based on this evidence,
26 the IHO reasoned that objective indicia of residency pointed overwhelmingly to Cow
27 Springs, not Black Mesa, as being Charley and his household's place of domicile.

28       The Court finds that it was rational for the IHO to discredit Charley and Plaintiff's

1  testimony as to the frequency of Charley's visits to Black Mesa and the extent to which
2  those visits demonstrated an intent to reside there. *Shaibi v. Berryhill*, 883 F.3d 1101, 1109
3  (9th Cir. 2017) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)) (noting that
4  it is a "fundamental principle than an agency, its experts, and [hearing officers] are better
5  positioned to weigh conflicting evidence than a reviewing court").

6  Plaintiff asserts that the IHO provided a "one sentence adverse credibility
7  determination as to the testimony of Charley and his wife" and therefore failed to properly
8  support his credibility findings on the record with substantial evidence. (Doc. 18 at 16.)
9  Although the IHO did not explain his credibility determinations in the section titled
10 "Credibility Findings," the IHO sufficiently explains his decision to discredit Plaintiff and
11 Charley's testimony in the body of the decision. *Begay v. Off. of Navajo & Hopi Indian
12 Relocation*, No. CV-20-08102-PCT-SMB, 2021 WL 4247919, at *4 (D. Ariz. Sept. 16,
13 2021) ("The IHO may set forward [credibility reasoning] either in the formal credibility
14 determination or in the body of the decision.").

15 The Court need not reach whether the IHO sufficiently supported his credibility
16 finding as to John Lee. The "specific and cogent reasons" standard for making adverse
17 credibility findings applies to "material testimony" or when the IHO's decision rests on a
18 negative credibility evaluation. *See Ceguerra v. Sec. of Health & Hum. Servs.*, 933 F.2d
19 735, 738 (9th Cir. 1991) ("[I]f an ALJ has grounds for disbelieving material testimony, it
20 is both reasonable and desirable to require the ALJ to articulate those grounds in the
21 original decision.") From the Court's review of the record, it is unclear what part of John
22 Lee's testimony, if credited, would have been material to the IHO's decision as to
23 Charley's residency. John Lee's testimony was considerably shorter in length than the other
24 witnesses at the hearing and did not cover the frequency or extent of Charley's visits to
25 Black Mesa. Further, Plaintiff does not explain how any error in the IHO's credibility
26 finding as to John Lee was of consequence to the IHO's ultimate eligibility determination.
27 *Del Norte Cnty. v. United States*, 732 F.2d 1462, 1467 (9th Cir. 1984) ("[I]nsubstantial
28 errors in an administrative proceeding that prejudice no one do not require administrative

decisions to be set aside.").

Thus, given that "credibility findings are granted substantial deference" and that the IHO is uniquely qualified to decide whether testimony "had about it the ring of truth," the Court concludes that IHO's credibility findings should not be disturbed. *Begay*, 305 F. Supp. 3d at 1049.

## B. The IHO did not depart from ONHIR policy.

Plaintiff argues that the IHO departed and disregarded ONHIR policy by "decid[ing] at the outset that the BIA enumeration was sufficient evidence to deny Charley's application." (Doc. 18 at 12.) Plaintiff points to past ONHIR decisions[2] in which applicants were granted relocation benefits despite their name or homesite not appearing in the BIA enumeration.

Plaintiff is correct to the extent that she argues the BIA enumeration *alone* cannot establish an applicant's residence. That said, the BIA enumeration "may be used as *prima facie* evidence of residency that [an applicant] then has the burden of disproving." *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1049 (D. Ariz. 2018). Here, the IHO relied, in part, on the BIA enumeration in determining that Charley was not domiciled on the HPL. (AR. 248.) However, the IHO also relied on evidence that Plaintiff and the children lived in Cow Springs on the NPL; that Charley sent all of his earnings to his family in Cow Springs; that Charley did not have his own residence at Black Mesa and that he stayed either with his sister or his father during his visits; that there was limited access to the HPL site, with travel available only through a wash; that another family claimed the site at Black Mesa; and that an ONHIR investigator was unable to find evidence of Charley's habitation at the Black Mesa. The IHO further reasoned that a nuclear family can only have one legal residence (domicile) and that, in this case, objective

---

[2] Plaintiff attached these decisions to her motion for summary judgment and her response brief. (Docs. 18-1 at 123–147; 24-1.) ONHIR objects to Plaintiff's inclusion of these decisions, contending that judicial review in an APA case is limited to the administrative record that was before the agency at the time of the decision and thus extra-record documents may not be considered. (Doc. 19 at 6.) The Court need not reach whether these decisions are proper for consideration because the Court finds that they do not assist in the resolution of this case. *See Akee*, 907 F. Supp. at 319.

- 8 -

indicia of residence overwhelmingly pointed to Charley's nuclear family having a residence in Cow Springs, not Black Mesa. The Court finds that the IHO did not exclusively rely on the BIA enumeration in making the residency determination and therefore did not depart from or disregard ONHIR policy. *See Begay*, 305 F. Supp. 3d at 1049.

### C. Substantial evidence supports the IHO's determination that Charley was not a resident of or temporarily away from the HPL on December 22, 1974.

Plaintiff contends that Charley was a resident of the HPL because even if he may have been temporarily away for the purposes of employment, he maintained substantial and recurring contracts with his HPL homesite. (Doc. 24 at 2.) Plaintiff appears to suggest that ONHIR's "temporarily away" policy applies here. *See Begay v. Off. of Navajo & Hopi Indian Relocation*, No. CV-21-3285443, 2022 WL 3285443, at *2 (D. Ariz. Aug. 11, 2022) ("If a plaintiff left the HPL temporarily to pursue employment, a plaintiff can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL.").

Plaintiff's argument is unpersuasive for two reasons. First, for the temporarily away policy to apply, an applicant must *first* establish that he was a legal resident of the HPL before then establishing that he maintained substantial, recurring contact with the HPL despite temporarily relocating elsewhere for work or school. *See Tso*, 2019 WL 1877360, at *5. Here, substantial evidence supports the IHO's finding that Charley was not a resident of the HPL. As discussed earlier, the IHO relied on the fact that Plaintiff and the children lived in Cow Springs; Charley's earnings went to Cow Springs to support his family there; Charley did not have a dwelling of his own at Black Mesa, nor was he enumerated there; another family claimed the site at Black Mesa as their own; and an ONHIR investigator could not confirm evidence of habitation at the Black Mesa site. Considering the record as a whole, the Court finds that it was reasonable for the IHO to conclude that Charley neither resided nor manifested an intent to reside at the HPL and thus he was not a legal resident as of December 22, 1974. In turn, because substantial evidence supports the IHO's finding

that Charley was not a legal resident of the HPL, the temporarily away policy does not apply.

Second, even assuming the predicate—that Charley was a resident of the HPL—there is no evidence that he was temporarily away for the purpose of employment. Although Charley worked in Page, Arizona, for three years (including in December of 1974), Charley commuted daily to and from his job. (AR. 142–44.) There is no evidence nor does Plaintiff contend that Charley temporarily moved to Page for his job. Given that the temporarily away policy is intended to "acknowledge[] the 'economic realities' of those residents who relocate temporarily for school or work[,]" it is unclear how the policy is relevant here. *Mike v. Off. of Navajo & Hopi Indian* Relocation, 2008 WL 54920, at *5 (D. Ariz. Jan. 2, 2008).

### D. ONHIR did not breach its fiduciary duties.

In passing, Plaintiff asserts that ONHIR's role "as a fiduciary requires it treat Charley . . . fairly and equally and provide him the maximum relocation benefits due [to] him as a victim of the involuntary relocation." (Doc. 24 at 1.) Plaintiff notes that ONHIR's mission as an agency is to "provide a 'thorough and generous' relocation program, taking 'into account all the social, economic, cultural, and other adverse impacts on persons involved in the relocation and . . . to avoid or minimize them.'" (*Id.* (quoting *Bedoni v. NHIRC*, 878 F.2d 1119, 1120 (9th Cir. 1989)).)

To the extent Plaintiff is arguing that ONHIR breached its fiduciary duties by denying relocation benefits to Charley, the Court is not persuaded. Though ONHIR has "an affirmative duty to manage and distribute funds appropriated pursuant to the Settlement Act," the duty to distribute those funds extends *only* to those applicants authorized to receive them. *Stago v. Off. of Navajo & Hopi Indian Relocation*, 526 F. Supp. 3d 95, 106 (D. Ariz. 2021). "Thus, whether ONHIR has a duty to disburse benefits to [an applicant] flows from the IHO's decision, but ONHIR's duty to disburse benefits to eligible applicants does not dictate [an applicant's] eligibility." *Id.*

Plaintiff also contends that part of ONHIR's duty as a fiduciary is to disclose to

Charley any evidence, reports, or information that could have helped establish his eligibility for those benefits. (Doc. 24 at 1–2.) Yet Plaintiff does not identify what, if any, evidence, report, or information ONHIR failed to disclose or how that information could have helped Charley establish his eligibility.

### IV. CONCLUSION

The Court finds that ONHIR's decision to deny Charley's application for relocation benefits based on a finding that Charley did not meet the legal residency requirement was not arbitrary and capricious. The decision comports with legal standards, is reasonable, and is supported by substantial evidence.

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 18) is **DENIED** and Defendant's cross-motion for summary judgment (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 21st day of March, 2024.

Douglas L. Rayes
United States District Judge